# In the United States Court of Federal Claims

No. 06-913L
(Filed: October 25, 2011)

```
*************************************
WINNEBAGO TRIBE OF NEBRASKA,      *
                                  *
            Plaintiff,            *
                                  *       RCFC 12(b)(1); 28 U.S.C. § 1500; Tohono
v.                                *       O'odham Nation; Substantially the Same
                                  *       Operative Facts; Trusted Integration, Inc.
THE UNITED STATES,                *
                                  *
            Defendant.            *
*************************************
```

Brian J. Leinbach, Los Angeles, CA, for plaintiff.

Michael D. Thorp, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**SWEENEY**, Judge

      The Winnebago Tribe of Nebraska ("Tribe"), a federally recognized Indian tribe, alleges that the United States has not properly generated, invested, or managed its tribal trust assets. It initially filed suit in federal district court seeking an accounting and reconciliation of its trust funds and other equitable relief. Then, while the federal district court suit was pending, the Tribe filed suit in this court seeking money damages. In light of the recent decision of the United States Supreme Court ("Supreme Court") in United States v. Tohono O'odham Nation, 131 S. Ct. 1723 (2011), the United States moves to dismiss the Tribe's complaint for lack of jurisdiction pursuant to 28 U.S.C. § 1500. For the reasons set forth below, the court grants the motion.

**I.  LEGAL STANDARD**

**A.  Jurisdiction**

      Whether the court has jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). The parties or the

court sua sponte may challenge the court's subject matter jurisdiction at any time. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to hear and decide suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969).

**B.  28 U.S.C. § 1500**

The statute relied upon by the United States in urging dismissal of the Tribe's complaint, 28 U.S.C. § 1500, deprives the Court of Federal Claims of jurisdiction over claims that are already pending in another court. Specifically, the statute provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500 (2006). This statute "was intended to protect the United States from having to defend two lawsuits over the same matter simultaneously." UNR Indus., Inc. v. United States, 962 F.2d 1013, 1019 (Fed. Cir. 1992) (en banc), aff'd sub nom. Keene Corp. v. United States, 508 U.S. 200 (1993).

In Loveladies Harbor, Inc. v. United States, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") concluded that "[f]or the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from the same operative facts, and must seek the same relief."[1] 27 F.3d 1545, 1551 (Fed. Cir. 1994)

---

[1] In arriving at this conclusion, the Federal Circuit drew from the holdings in several prior decisions. First, in Johns-Manville Corp. v. United States, the Federal Circuit held that "the term 'claim' in 28 U.S.C. § 1500 [is] defined by the operative facts alleged, not the legal theories raised." 855 F.2d 1556, 1563 (Fed. Cir. 1988). In other words, alleging an alternative legal theory would not create a new claim. Next, in Casman v. United States, the United States Court of Claims found that the relief sought by the plaintiff–money damages in the form of back pay–was "entirely different" from the relief he sought in the federal district court–equitable relief in the form of reinstatement–rendering the claims alleged in the two suits distinct. 135 Ct. Cl. 647 (1956), abrogated by Tohono O'odham Nation, 131 S. Ct. at 1731. Finally, in Keene Corp., the Supreme Court clarified that only "some overlap" in the relief requested was necessary to

(en banc), abrogated by Tohono O'odham Nation, 131 S. Ct. at 1731.  In Tohono O'odham Nation, however, the Supreme Court rejected the standard set forth in Loveladies Harbor, Inc. and held that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the [Court of Federal Claims], if they are based on substantially the same operative facts, regardless of the relief sought in each suit."  131 S. Ct. at 1731.  To determine whether the Tribe's two suits "are based on substantially the same operative facts," the court examines the factual allegations in each of the complaints.

## II.  THE COMPLAINTS

### A.  Federal District Court

The Tribe filed suit in the United States District Court for the District of Columbia on December 30, 2005.  In its amended complaint, filed on June 30, 2006, it set forth a statement of facts that served as the basis for its claims for relief.  According to the amended complaint, the Tribe resides on an Indian reservation established by the United States, and owns certain valuable assets that are held in trust by the United States for its benefit, including money, land, and the natural resources located on its land.  In addition, the Tribe has entered into treaties, settlements, and other contractual agreements with the United States that granted the United States possession of land and resources in exchange for specific consideration, such as money, goods, and services.  In many instances, Congress appropriated money to pay the consideration.  Those appropriated funds became part of the Tribe's trust assets.

The land and resources held in trust for the Tribe are inalienable except as authorized by Congress or as allowed by its treaties with the United States.  Congress has authorized the Secretary of the United States Department of the Interior ("Secretary") to convey certain interests in the trust land and resources, including leases, easements, rights of way, resource harvesting, and resource use agreements.  Congress has also authorized the Secretary to withdraw certain tribal lands from the trust for federal and private purposes.  The Secretary must adhere to federal law in making the conveyances.  The Secretary must also, in general, compensate the Tribe for the conveyance and use of tribal land and resources.

Pursuant to the authority granted by Congress, the Secretary has approved, with respect to the Tribe's land, agreements for the extraction and use of resources, leases, easements, and grazing permits, as well as grants to third parties for the use of the Tribe's land and resources for specific purposes.  The Secretary has also conveyed title to certain of the Tribe's lands and approved the use of the Tribe's land for federal purposes.

The Secretary, along with other federal officials, is charged with fulfilling the trust obligations of the United States.  As trustee, the United States has a fiduciary relationship with

---

satisfy the "same relief" analysis.  508 U.S. at 212-13.  Therefore, to maintain distinct claims, a plaintiff would be required to seek mutually exclusive forms of relief.

the Tribe and must administer the trust with the greatest possible skill and care.  Thus, the United States is obligated to ensure that the trust assets are protected, preserved, and managed so as to produce the highest and best use and return; ensure that the Tribe is afforded its full rights to compensation; collect trust funds; create trust accounts; ensure that compensation for the loss or use of trust land and resources is placed into the trust accounts; maintain adequate records regarding the trust assets; maintain adequate systems and controls to protect against errors or dishonesty; provide regular and accurate accountings to the Tribe; refrain from self-dealing or benefitting from managing trust assets; ensure compliance with the legal protections afforded the Tribe; and consult with the Tribe regarding the management of trust assets.

The officials acting on behalf of the United States as trustee control and manage all of the Tribe's trust assets.  They also have control over all of the books and records of accounts related to the trust assets.  However, they have never provided the Tribe a full, accurate, or timely account of the trust assets or a clear statement of origin and use of all of the funds in the trust accounts.  The Tribe is therefore uninformed regarding the trust assets it owns, the income and interest generated by its current and formerly owned trust assets, the disposition of that income, and whether the United States has properly managed its trust assets.  These issues, as they relate to Indian tribal trusts in general, have been investigated and documented by the United States over the last two decades.

Based on these factual allegations, the Tribe averred in its amended complaint that the United States' mismanagement of its trust assets caused it to suffer losses, but that it could not ascertain the extent of its losses because the United States had not provided it with a full and complete accounting of its trust assets.

### B.  The Court of Federal Claims

The Tribe filed suit in the Court of Federal Claims on December 28, 2006.  As it did in its amended complaint in federal district court, it sets forth a statement of facts in its complaint that serves as the basis for its claims for relief.  According to the Tribe, it is a party to a series of treaties with the United States, it is under the protection of the United States, and a fiduciary relationship exists between it and the United States.  Some of the treaties to which it is a party directed the payment of monetary or other consideration to the Tribe, provided for the creation of trust accounts, and established requirements for the management of trust funds.  Other treaties established the reservation upon which the Tribe currently resides.  Altogether, the Tribe owns a large number of valuable assets that are held in trust by the United States for its benefit, including money, land, and the natural resources located on its land.

The land and resources held in trust for the Tribe are inalienable except as authorized by Congress or as allowed by its treaties with the United States and its organic documents.  Congress has authorized the Secretary to convey certain interests in the trust land and resources, such as leases, easements, rights of way, resource harvesting, and resource use agreements.  The

Secretary must adhere to federal law in making the conveyances. The Secretary must also, in general, compensate the Tribe for the conveyance and use of the land and resources.

In addition to setting forth requirements for conveying interests in trust land and resources, federal law authorizes the Secretary to collect income from trust assets and deposit that income into the United States Treasury or other accounts. Federal law also requires the United States to pay interest on trust funds and to invest the trust funds, thereby increasing the productivity of the funds.

The United States controls and manages the Tribe's trust assets. It has approved leases, easements, rights-of-way, and third-party uses and taking of land and resources. It also assumed the responsibility for collecting, depositing, and investing the income generated from its management of the Tribe's trust assets. Indeed, it is required to invest the Tribe's trust funds in the highest-yielding investment vehicle available.

The United States' role as trustee obligates it to ensure that the trust assets are protected, preserved, and managed so as to produce the highest and best use and return; ensure that the Tribe is afforded its full rights to compensation; and administer its duties with the greatest possible skill and care. It must also exercise opportunities to obtain monetary benefits from the trust land and resources; enter into reasonable contracts to advance those opportunities; timely collect trust funds; timely create trust accounts; ensure that compensation for the loss or use of trust land and resources is timely placed into the trust accounts; maintain adequate records regarding the trust assets; maintain adequate systems and controls to protect against errors or dishonesty; provide regular and accurate accountings to the Tribe; refrain from self-dealing or benefitting from managing trust assets; ensure compliance with the legal protections afforded the Tribe; and consult with the Tribe regarding the management of trust assets. The United States is further obligated by statute to provide adequate systems for accounting for and reporting trust account balances; provide adequate controls over receipts and disbursements; provide timely periodic reconciliations of the trust accounts; determine accurate cash balances; prepare and supply periodic statements of account performance, with account balances available daily; establish consistent written policies and procedures for trust account management and accounting; provide adequate staffing, supervision, and training for trust account management and accounting; and appropriately manage natural resources located on trust lands.

For the last several decades, the United States' administration of Indian tribal trusts and management of tribal trust assets have been investigated and criticized. The following problems have been identified: the United States' inability to account for funds due to its loss of or failure to keep records, undue delays in making investments, and poor investment decision making. The Tribe alleges that these problems have affected its trust assets and have caused it to sustain monetary losses. It further alleges that the United States' failure to provide an accounting of its trust assets prevents it from knowing the extent of its losses.

## III. DISCUSSION

In its motion to dismiss, the United States contends that both of the Tribe's suits arise from substantially the same operative facts and that, as a result, the Tribe's complaint falls within the ambit of 28 U.S.C. § 1500 and should be dismissed. In response, the Tribe proffers a definition of operative facts–those facts that are material to the proof of a claim–meant to exclude those facts alleged in a complaint that merely provide background for the substantive allegations.[2] It accordingly claims that any factual similarity between the two suits is limited to these background facts and does not extend to their respective operative facts. The Tribe further contends that its suits are not based on the same operative facts because it alleges breaches of distinct trust duties in each suit and the evidence required to prove the breaches in each suit would therefore be different. The United States responds that the Tribe's attempt to distinguish the facts upon which the suits are based is unavailing. The court agrees.

In both complaints, the Tribe identifies the same trust corpus and many of the same trust duties. And, in both complaints, the Tribe alleges that the United States improperly administered its trust and mismanaged its trust assets by, among other things, being unable to account for the Tribe's trust assets and income, and failing to invest trust funds in the most productive manner. In other words, the Tribe alleges in both suits that the United States breached its trust responsibilities. Moreover, in evaluating the Tribe's claims, both the federal district court and the Court of Federal Claims would be required to examine evidence concerning the United States' accounting and management of the Tribe's trust assets. Indeed, the Tribe concedes as much by alleging in its federal district court complaint that it requires an accounting to ascertain the extent of its money damages, while at the same time alleging in its Court of Federal Claims complaint that it is prevented from knowing the extent of its money damages because the United States has not provided an accounting. The facts forming the basis of the two suits are clearly intertwined. Thus, rather than presenting two distinct sets of operative facts, as the Tribe contends, the complaints reveal a substantial factual overlap between the two suits.[3]

---

[2] In support of this assertion, the Tribe relies upon <u>Loveladies Harbor, Inc.</u>, in which the Federal Circuit posited that "[i]nsofar as a fact is 'operative'–<u>i.e.</u>, relevant to a judicially imposed remedy–it is necessarily associated with an underlying legal theory, that is, the cause of action." 27 F.3d at 1551 n.17. Because a definition of "operative fact" was not necessary for the resolution of the issues before the Federal Circuit, however, this language amounts to dicta, as the Federal Circuit recognized. <u>See id.</u> (declining to "further refine the meaning of 'operative facts'" because it was "unnecessary for [its] decision").

[3] This conclusion is in accord with the Federal Circuit's recent decision in <u>Trusted Integration, Inc. v. United States</u>, No. 2010-5142, 2011 WL 4888787 (Fed. Cir. Oct. 14, 2011). In that case, the plaintiff alleged in the Court of Federal Claims that the United States Department of Justice breached a license agreement, while in federal district court it alleged that the United States Department of Justice breached an agreement to act as a joint enterprise. <u>Id.</u> at *7-9. The Federal Circuit held that the plaintiff was not "simply repackaging the same conduct

The court is not alone in rejecting the jurisdictional arguments advanced by the Tribe. Other judges of the Court of Federal Claims have done so in cases presenting similar factual and procedural circumstances. See <u>Omaha Tribe of Neb. v. United States</u>, No. 06-911L, 2011 WL 4793244 (Fed. Cl. Oct. 7, 2011); <u>Red Cliff Band of Lake Superior Chippewa Indians v. United States</u>, No. 06-923L, slip op. (Fed. Cl. Sept. 19, 2011) (unpublished order); <u>E. Shawnee Tribe of Okla. v. United States</u>, 82 Fed. Cl. 322 (2008), <u>rev'd</u>, 582 F.3d 1306 (Fed. Cir. 2009), <u>vacated</u>, 131 S. Ct. 2872 (2011); <u>Ak-Chin Indian Cmty. v. United States</u>, 80 Fed. Cl. 305 (2008); <u>see also</u> <u>Yankton Sioux Tribe v. United States</u>, 84 Fed. Cl. 225 (2008) (holding, despite the plaintiff's general contention that the operative facts were distinct in each suit, that the plaintiff's federal district court and Court of Federal Claims suits presented substantially the same operative facts), <u>aff'd</u>, No. 2009-5027, 2011 WL 3873846 (Fed. Cir. Sept. 2, 2011) (unpublished decision). And, as the Supreme Court remarked in <u>Tohono O'odham Nation</u> upon holding that the Court of Federal Claims had been correct to conclude that the facts in the plaintiff's federal district court and Court of Federal Claims suits were nearly identical:

> The two actions both allege that the United States holds the same assets in trust for the Nation's benefit. They describe almost identical breaches of fiduciary duty–that the United States engaged in self-dealing and imprudent investment, and failed to provide an accurate accounting of the assets held in trust, for example. Indeed, it appears that the Nation could have filed two identical complaints, save the caption and prayer for relief, without changing either suit in any significant respect.

131 S. Ct. at 1731. Such is the case here. Both of the Tribe's suits are "based on substantially the same operative facts," rendering them "for or in respect to the same claim . . . ." <u>Id.</u> Accordingly, because the Tribe's suit in federal district court was pending at the time it filed suit in the Court of Federal Claims, the court must dismiss the Tribe's complaint pursuant to 28 U.S.C. § 1500.

---

into two distinct legal theories," but instead had "asserted two distinct claims, that involve[d] distinct agreements, whose breaches [gave] rise to distinct damages, and which require[d] distinct proofs." <u>Id.</u> at *10; <u>accord</u> <u>id.</u> at *9 (noting that the two agreements were "distinct contracts," that breaches of each agreement required "different conduct," and that "the facts that would give rise to breach of either of these agreements [were] not legally operative for establishing breach of the other"). Unlike the circumstances presented in <u>Trusted Integration, Inc.</u>, however, resolution of the Tribe's claims in this court would require consideration of the facts alleged and conduct described in the Tribe's federal district court complaint. In other words, the Tribe has merely taken its allegations of the United States' conduct from its suit in federal district court and repackaged them in its Court of Federal Claims suit.

## IV.  CONCLUSION

For the reasons set forth above, the court **GRANTS** the United States' motion to dismiss and **DISMISSES** the Tribe's complaint for lack of jurisdiction.  No costs.  The clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge
